IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KAREEM HICKS**<br>Plaintiff,<br><br>v.<br><br>**MEMORIAL HERMANN HEALTH SYSTEM; ANDREA DANIELS; STEPHANIE AURISANO; and DAVID AURISANO,**<br>Defendants. | §<br>§<br>§<br>§   **CIVIL ACTION NO.**<br>§       **4:25-cv-05734**<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

**COMES NOW** Plaintiff **KAREEM A. HICKS**, by and through undersigned counsel, and respectfully files this *Original Complaint* against **MEMORIAL HERMANN HEALTH SYSTEM** and the individually named Defendants identified in the case caption. In support thereof, Plaintiff would respectfully show the Court as follows:

## I.   NATURE OF THE CASE

This civil action arises under Title VII, 42 U.S.C. § 1981, and Texas Labor Code Chapter 21, and challenges the discriminatory and retaliatory treatment inflicted upon Plaintiff, a Black gay male clinician, during his employment with Memorial Hermann. Defendants subjected Plaintiff to selective enforcement, disparate treatment, and pretextual disciplinary measures not applied to similarly situated non-Black and/or heterosexual employees, culminating in his wrongful termination shortly after he engaged in protected activity. Plaintiff seeks all legal and equitable remedies available under federal and state law.

## II. INTRODUCTION

1. This is an action for redress under **Title VII**, **42 U.S.C. § 1981**, and **Texas Labor Code Chapter 21**, arising from Defendants' unlawful discrimination and retaliation against Plaintiff during his employment as a Behavioral Health Clinician.

2. Plaintiff, a Black gay man, was subjected to heightened scrutiny, differential treatment, and selectively enforced disciplinary expectations not imposed on similarly situated non-Black or heterosexual coworkers. These actions intensified after Plaintiff raised concerns relating to workplace fairness, data integrity, and compliance with clinical documentation requirements.

3. Defendants ultimately relied on **false and pretextual allegations** to justify terminating Plaintiff on or about May 13, 2025. Defendants' actions violated Plaintiff's rights to work free from discrimination and retaliation, and Plaintiff seeks all compensatory, punitive, and equitable relief permitted by law.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to **28 U.S.C. § 1331**, because Plaintiff asserts claims arising under federal law, including Title VII and 42 U.S.C. § 1981.

5. This Court has jurisdiction pursuant to **28 U.S.C. § 1343(a)(3)–(4)**, as this action seeks to redress the deprivation of rights secured by federal civil rights statutes.

6. This Court has **supplemental jurisdiction** over Plaintiff's related state-law claims under **28 U.S.C. § 1367(a)**.

7. Venue is proper in the **Southern District of Texas, Houston Division**, under **28 U.S.C. § 1391(b)**, because the events giving rise to this lawsuit occurred in this District and Defendants reside in and/or conduct substantial business herein.

## IV.   PARTIES

8. **Plaintiff KAREEM A. HICKS** is an individual residing in Harris County, Texas. Plaintiff appears through undersigned counsel.

9. **Defendant MEMORIAL HERMANN HEALTH SYSTEM** is a Texas nonprofit health system and an "employer" within the meaning of Title VII and Texas Labor Code Chapter 21. It may be served with process through its registered agent at **929 Gessner Road, Suite 2600, Houston, Texas 77024**, or wherever it may be found.

10. **Defendant ANDREA DANIELS** is an individual employed by Memorial Hermann in a supervisory or managerial capacity and participated in the discriminatory and retaliatory conduct alleged herein. She may be served with process at her place of employment at Memorial Hermann, at her last known residential address once obtained, or wherever she may be found.

11. **Defendant STEPHANIE AURISANO** is an individual employed by Memorial Hermann in a supervisory or managerial capacity and participated in the discriminatory and retaliatory conduct alleged herein. She may be served with process at her place of employment at Memorial Hermann, at her last known residential address once obtained, or wherever she may be found.

12. **Defendant DAVID AURISANO** is an individual employed by Memorial Hermann in a supervisory or managerial capacity and participated in the discriminatory and retaliatory conduct alleged herein. He may be served with process at his place of employment at Memorial Hermann, at his last known residential address once obtained, or wherever he may be found.

### V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff timely filed a Charge of Discrimination with the **U.S. Equal Employment Opportunity Commission** ("EEOC"), asserting claims of discrimination and retaliation arising from the conduct described in this Complaint.

14. The Charge was assigned EEOC Charge No. 460-2025-09717.

15. On **September 4, 2025**, the EEOC issued Plaintiff a **Notice of Right to Sue**, entitling him to pursue his federal claims in court.

16. Plaintiff brings this action within 90 days of receiving the Notice of Right to Sue; accordingly, all conditions precedent to suit under **Title VII** and **Texas Labor Code Chapter 21** have been satisfied or otherwise fulfilled.

17. To the extent required, Plaintiff has exhausted all available administrative remedies, and this action is properly before this Court.

### VI.     STATEMENT OF FACTS

18. Plaintiff **Kareem A. Hicks** is a Black gay male who was employed by Memorial Hermann Health System as a **Behavioral Health Clinician** from approximately 2021 until his termination on or about **May 13, 2025**. During his tenure, Plaintiff received consistently positive feedback, strong performance evaluations, and no history of significant disciplinary issues.

19. In late 2024, Memorial Hermann implemented the **Iris triage-tracking system**, which altered how behavioral health clinicians documented triage times, patient encounters, and workflow expectations. As part of his clinical responsibilities, Plaintiff routinely documented triage assessments, coordinated crisis response, and ensured accurate reporting and charting.

20. Beginning in late 2024 and continuing into early 2025, **Plaintiff observed and raised concerns** about **discrepancies between reported and actual triage times**, the accuracy of Iris-generated time stamps, and the fairness and feasibility of new documentation expectations. Plaintiff's questions and concerns were **professional, data-driven, and raised in good faith**.

21. Shortly after Plaintiff began raising these concerns, **the tone and manner of his supervisors shifted noticeably**. Plaintiff was excluded from routine internal communications, experienced unexplained scheduling irregularities, and became subjected to heightened scrutiny not applied to similarly situated non-Black and/or heterosexual colleagues.

22. This pattern intensified following a May 2025 staff meeting, during which another staff member questioned whether triage times were based on nursing reports or generated by the Iris system. Supervisors **Stephanie Aurisano** and **David Aurisano** responded that clinicians were expected to rely on Iris-generated times. Plaintiff sought professional clarification regarding the accuracy of those entries and how to reconcile discrepancies.

23. Plaintiff's brief and appropriate participation in that discussion was later **mischaracterized as "disruptive"**, despite the fact that similarly situated non-Black and/or heterosexual employees routinely questioned supervisory directives, engaged in broader debates during meetings, or raised concerns about workflow issues without consequence.

24. Following this meeting, **Defendants began constructing** a **pretextual disciplinary narrative** around Plaintiff. Policies and expectations were **selectively enforced**, and Plaintiff was reprimanded for conduct or documentation issues that were **ignored, excused, or routinely tolerated** when committed by non-Black and/or heterosexual employees

performing the same role.

25. Defendants imposed documentation and triage-timing requirements on Plaintiff that were not applied consistently across the behavioral health team. Several white and/or heterosexual clinicians were permitted to deviate from the same standards without any form of corrective action.

26. The sudden shift in managerial conduct, exclusion from communications, escalation of scrutiny, and disparate enforcement of policies all reflected a developing **animus** based on Plaintiff's **race**, **sex**, and/or **sexual orientation**, as well as **retaliatory motive** following Plaintiff's protected activity regarding workplace fairness and data integrity.

27. On or about **May 13, 2025**, Memorial Hermann terminated Plaintiff's employment. The stated grounds for termination—based largely on the false assertion that Plaintiff engaged in "disruptive" conduct during the May meeting and other contrived performance concerns—were **unfounded, inconsistent with his employment history, and pretextual**.

28. As a direct result of Defendants' discriminatory and retaliatory conduct, Plaintiff suffered **lost wages, lost benefits, emotional distress, reputational harm, and other economic and noneconomic damages** for which he now seeks redress under federal and state law.

### VII.   CAUSES OF ACTION

A. **FIRST CAUSE OF ACTION** – *Race, Sex, and/or Sexual Orientation Discrimination Title VII of the Civil Rights Act of 1964 – 42 U.S.C. § 2000e-2(a)*
   **(Against Memorial Hermann Health System)**

29. Plaintiff realleges and incorporates all preceding paragraphs.

30. Plaintiff is a member of multiple protected classes under Title VII, including **race (Black)**, **sex**, and **sexual orientation (gay)**.

31. Under **42 U.S.C. § 2000e-2(a)**, it is unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of race, sex, or sexual orientation.

32. Plaintiff was qualified for his position and performed his duties in a satisfactory manner.

33. Defendants subjected Plaintiff to **disparate treatment**, including heightened scrutiny, exclusion from communications, and selective enforcement of documentation and conduct expectations not applied to **non-Black and/or heterosexual employees**.

34. Plaintiff was ultimately terminated based on reasons that were **false, fabricated, and pretextual**, while similarly situated employees outside his protected classes were not disciplined.

35. Plaintiff's race, sex, and/or sexual orientation were motivating factors in the adverse employment actions taken against him.

36. As a direct result, Plaintiff suffered economic and noneconomic damages for which he seeks relief.

**B. SECOND CAUSE OF ACTION – Retaliation – Title VII of the Civil Rights Act of 1964 — 42 U.S.C. § 2000e-3(a)**
**(Against Memorial Hermann Health System)**

42. Plaintiff realleges and incorporates all preceding paragraphs.

43. Under **42 U.S.C. § 2000e-3(a)**, it is unlawful for an employer to retaliate against an employee because he opposed discriminatory practices or participated in protected activity.

44. Plaintiff engaged in **protected activity by raising good-faith concerns** regarding fairness, data accuracy, workflow integrity, and compliance issues within the Iris triage-tracking system.

45. Following this protected activity, Defendants subjected Plaintiff to heightened scrutiny, exclusion, disparate enforcement, and adverse alterations to the terms and conditions of his employment.

46. Defendants used the May 2025 staff meeting as a **retaliatory pretext to discipline and terminate Plaintiff**, despite comparable conduct from similarly situated employees being tolerated.

47. But for Plaintiff's protected activity, Defendants would not have terminated him.

48. As a result, Plaintiff suffered damages including lost wages, emotional distress, and reputational harm.

C. **THIRD CAUSE OF ACTION –** *Race and/or Sex/Sexual Orientation Discrimination & Retaliation – Texas Labor Code §§ 21.051 and 21.055*
   **(Against Memorial Hermann Health System)**

49. Plaintiff realleges and incorporates all preceding paragraphs.

50. Memorial Hermann is an employer within the meaning of **Texas Labor Code Chapter 21**.

51. **Texas Labor Code § 21.051** prohibits discrimination based on race, sex, and/or sexual orientation.

    **Texas Labor Code § 21.055** prohibits retaliation for opposing discriminatory practices or participating in protected activity.

52. Plaintiff was subjected to disparate treatment, selective policy enforcement, and exclusion not applied to similarly situated employees outside his protected characteristics.

53. Defendants retaliated against Plaintiff **after his protected activity** by escalating scrutiny and **constructing a pretextual disciplinary basis** for his termination.

54. Defendants' conduct violated §§ 21.051 and 21.055 and directly caused Plaintiff's injuries.

### D. FOURTH CAUSE OF ACTION – Race Discrimination and Retaliation – 42 U.S.C. § 1981 (as enforced through 42 U.S.C. § 1983 against private actors via direct action) (Against Memorial Hermann and All Individual Defendants)

55. Plaintiff realleges and incorporates all preceding paragraphs.

56. **42 U.S.C. § 1981** guarantees all persons the equal right to make and enforce contracts—including employment agreements – free from **racial discrimination** and **retaliation**.

57. Defendants – including Memorial Hermann and the individual defendants interfered with Plaintiff's employment rights on the basis of his race.

58. Individual Defendants personally participated in:

    a. Selective enforcement of policies against Plaintiff;

    b. Fabrication or exaggeration of discipline;

    c. Mischaracterization of Plaintiff's conduct;

    d. Recommending, approving, or ratifying Plaintiff's termination on pretextual grounds; and,

    e. Excluding Plaintiff from workplace communications and opportunities.

59. These actions were **intentional, malicious, and carried out with reckless disregard** for Plaintiff's federally protected rights.

60. As a direct result, Plaintiff suffered compensable harm and seeks compensatory and punitive damages under § 1981.

## VIII.  DAMAGES

61. As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered and continues to suffer **economic damages**, including but not limited to lost wages, lost benefits, loss of future earnings, and diminished earning capacity.

62. Plaintiff has further suffered **non-economic damages**, including emotional distress, mental

anguish, humiliation, reputational harm, and loss of enjoyment of life, all of which were caused by Defendants' unlawful actions.

63. Plaintiff seeks **compensatory damages** for all pecuniary and non-pecuniary losses resulting from Defendants' conduct.

64. Defendants' conduct was intentional, malicious, and carried out with reckless disregard for Plaintiff's federally protected rights. Plaintiff therefore seeks **punitive damages** against all Defendants for whom such damages are permitted, including under **42 U.S.C. § 1981** and **Title VII** to the extent available.

65. Plaintiff also seeks **equitable relief**, including but not limited to reinstatement or, in the alternative, front pay, injunctive relief to prevent future discriminatory practices, and such additional equitable remedies as the Court deems appropriate.

66. Plaintiff is further entitled to **reasonable attorney's fees, litigation costs, and expenses**, including those available under Title VII, 42 U.S.C. § 1988, and Texas Labor Code Chapter 21.

67. Plaintiff seeks **pre-judgment and post-judgment interest** as allowed by law.

## IX.    JURY DEMAND

68. Plaintiff demands trial by jury on all issues so triable.

## X.    PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff **KAREEM A. HICKS** respectfully prays that Defendants be cited to appear and answer herein, and that upon final hearing of this matter, the Court enter judgment in Plaintiff's favor and award the following relief:

a. **Compensatory damages** for all economic losses, including back pay, lost benefits, and loss of future earnings;

b. **Front pay** or **reinstatement**, as deemed appropriate by the Court;

c. **Compensatory damages** for emotional distress, mental anguish, humiliation, and reputational harm;

d. **Punitive damages** against all Defendants for whom such damages are permitted by law;

e. **Equitable relief**, including injunctive and declaratory relief to prevent further unlawful discrimination and retaliation;

f. **Attorney's fees, litigation costs, and expenses** pursuant to Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1988, and Texas Labor Code Chapter 21;

g. **Pre-judgment and post-judgment interest** at the maximum rates allowed by law; and

h. Such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

## XI.    CONCLUSION

Memorial Hermann and the individual Defendants elected to disregard their legal obligations and violate the civil rights of a Black gay clinician who simply sought fairness, integrity, and compliance in his workplace. Their **conduct was discriminatory, retaliatory, and wholly inconsistent with the standards of a lawful employer**. Plaintiff therefore asks this Court to grant the relief requested and to make clear that discrimination, retaliation, and pretext have no place in any workplace – least of all one entrusted with the care and dignity of others.

11/29/2025

Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
Admitted: **U.S. District Court, Southern District of Texas**
SDTX Bar No. 3746531
info@vincentlawpllc.com
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas  77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas  77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**